### TRUE BROS. v. ST. LOUIS, B. & M. RY. CO. et al.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 2, 1911. Rehearing Denied Jan. 13, 1912.)

1. EVIDENCE (§ 544*)—EXPERT TESTIMONY—QUALIFICATION OF WITNESS.

Testimony of a witness that he was in the cattle business, and had been buying, selling, and shipping cattle for 35 years, and had a large experience in shipping such cattle as those in controversy over the same sections of country, and saw those in controversy before they were loaded, qualifies him as an expert to give his opinion as to what should have been the percentage of loss if the cattle had been handled with such care and dispatch as is usually used in making such shipments.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356; Dec. Dig. § 544.*]

2. EVIDENCE (§ 527*)—EXPERT TESTIMONY.

There being an issue, in an action for injury to cattle in transit, as to the cattle having been in physical condition to stand the shipment, and as to whether the loss resulted from their inherent weakness, the opinion of an expert as to what should have been the percentage of loss if the cattle had been handled with the care and dispatch usually used in making such shipments is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2334, 2335; Dec. Dig. § 527.*]

3. EVIDENCE (§ 545*)—EXPERT TESTIMONY—EVIDENCE TO SHOW QUALIFICATION.

For the purpose of qualifying witnesses to testify to the probable loss of cattle in the course of a shipment if handled in the usual manner, they may testify that the cattle in question were in better condition to stand the shipment than the average cattle that go over the route, and that they were just such cattle as they had often loaded for the trip.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2360–2362; Dec. Dig. § 545.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

4. EVIDENCE (§ 555*)—EXPERT TESTIMONY.

Witness giving opinion evidence as to the probable loss of cattle in a certain shipment, if handled in the usual manner, may testify to the condition of other cattle shipped a few days later, other evidence tending to show they were just such cattle as those in controversy having been taken from the same herd and range at about the same time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. § 555.*]

Appeal from District Court, Wise County; J. W. Patterson, Judge.

Action by True Bros. against the St. Louis, Brownsville & Mexico Railway Company and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Templeton & Agerton and R. E. Carswell, for appellants. Claude Pollard, McMurray & Gettys, and C. M. Robards, for appellee St. Louis, B. & M. Ry. Co. Terry, Cavin & Mills and McMurray & Gettys, for appellee Gulf, C. & S. F. Ry. Co. N. H. Lassiter, Robt. Harrison, and McMurray & Gettys, for appellee Chicago, R. I. & G. Ry. Co.

SPEER, J. This is an action of damages for injuries received by a shipment of cattle forwarded by True Bros. over the lines of the St. Louis, Brownsville & Mexico Railway Company, the Gulf, Colorado & Santa Fé Railway Company, and the Chicago, Rock Island & Gulf Railway Company from Norias to Ringgold. A jury trial resulted in a verdict and judgment for defendants, and the plaintiffs have appealed.

[1, 2] The questions presented for the most part arise on the trial court's rulings in admitting or excluding evidence. It is sufficient for the purposes of our opinion to state that one of the sharply contested issues in the case was whether or not the cattle were in such physical condition as to stand shipment; the contention of appellees being that the loss, which was heavy, resulted from the inherent weakness of the cattle. Appellants offered the following interrogatory and answer from the deposition of the witness Marion Sansom: "Q. If these cattle involved in this suit had been handled with such care and dispatch as is usually used in making such shipments, what in your judgment should have been the percentage of loss in said shipments? A. Not more than 1 per cent. I should say if the cars were properly bedded and the cattle given a good run." The question and answer were excluded upon the objections that the answer was "a conclusion of the witness not based upon any experience of his, and cannot be based upon any experience with any degree of certainty." We think the court erred in this ruling. The witness testified that he was in the cattle business, and had been buying, selling, and shipping for about 35 years. He testified that he had had quite a

large experience in shipping such cattle as these in controversy by rail from Southwest Texas to North Texas and Oklahoma points. He saw the shipments in controversy before they were loaded at Norias. This we think was sufficient to qualify the witness as an expert and to make admissible his opinion as to the probable loss if the cattle were shipped in the usual way. The cases of M., K. & T. Ry. Co. v. Scoggin & Dupree, 123 S. W. 229, M., K. & T. Ry. Co. v. Gober, 125 S W. 385, and Kemendo v. Fruit Co., 131 S. W 73, while not exactly in point, are, nevertheless, authority for the admission of expert evidence very similar to that under consideration. Similar errors were committed as to the witnesses Cæsar Kleberg and E. H. East, but these rulings might not call for a reversal if they stood alone, since those witnesses were permitted to testify substantially to the same facts as those excluded; but the same cannot be said as to the witness Sansom.

[3, 4] The witness Kleberg was asked the following question: "What was the condition of the cattle (involved in this suit) with reference to health, flesh, strength, and ability to stand shipment from Norias to Ringgold, Tex.? What is your best judgment as to this and on what is your judgment based? To this he answered: "They were in better condition than the average cattle that go to the territory. On previous shipments made by myself and others." The question and answer were excluded on the ground that they instituted a comparison with other cattle whose condition was not shown. The court also excluded the testimony of the witness East to the effect that "they (the cattle involved in this suit when loaded at Norias) were just such cattle as I have loaded many times for Oklahoma points." It is objected that this, too, calls for a comparison with other cattle whose condition is not shown, which is true, but the evidence was admissible for the purpose of qualifying the witnesses to testify as to the probable loss if the cattle were handled in the usual manner, which testimony was offered and excluded as already stated. The same question is raised in another assignment, wherein it is complained that the court excluded the following answer of the same witness: "These cattle were just about the same as most cattle that go to pasture in North Texas and Oklahoma." Complaint is also made of the court's ruling in permitting witnesses to testify as to the physical condition and appearance of two other shipments occurring four days after the first train load of these in controversy was shipped. There was no error in this for the reason that other evidence tended to show that they were just such cattle as these in controversy, having been taken from the same herd and range at about the same time. And for the same rea-

son there was no error in permitting the witnesses Johnson and Cox to testify as to the condition of the same cattle and their ability to stand shipment.

We find no other errors, but for those discussed the judgment is reversed and the cause remanded.